# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DARLA J. SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-799-R** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff Darla J. Sanders brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. United States District Judge David L. Russell has re-referred this matter to the undersigned Magistrate Judge for additional proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. *See* Doc. Nos. 15, 18. Upon review of the administrative record (Doc. No. 8, hereinafter "R. __") and the arguments and authorities submitted by the parties, the undersigned recommends that the Commissioner's decision be affirmed.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed applications for DIB and SSI on December 13, 2010. R. 130-35, 153. Plaintiff alleged a disability onset date of November 28, 2008, and sought

benefits on the basis of degenerative disc disease, muscle and nerve damage, depression, knee problems, tailbone spur, and cluster headaches. R. 153, 157. Following denial of her applications initially and on reconsideration, Plaintiff requested and was granted a hearing before an ALJ, which was held on October 2, 2012. R. 31-84, 88-94. In addition to Plaintiff, a vocational expert appeared and testified at the hearing. R. 35-60. The ALJ issued an unfavorable decision on January 25, 2013. R. 15-24.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 28, 2008. R. 17. At step two, the ALJ found that Plaintiff had the severe impairments of: degenerative disc disease, headaches, double depression, fibromyalgia, and obesity. R. 17. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 17-19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 19-23; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the ability to perform light work, subject to additional restrictions:

> [T]he claimant has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or

scaffolds.  The claimant can occasionally reach overhead.  The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but [can] have no contact with the general public.

R. 19; *see* 20 C.F.R. §§ 404.1567(b), .1569a, 416.967(b), .969a.  The ALJ determined at

step four that Plaintiff had no past relevant work.  R. 23.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform.  R. 23-24.  Taking into consideration the vocational expert's testimony regarding the degree of erosion to Plaintiff's unskilled, light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform the unskilled, light occupations of apparel stock checker, small parts assembler, and price marker, and that such occupations offer jobs that exist in significant numbers in the national economy.  R. 23-24.  On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from November 28, 2008, through the date of the decision.  R. 24; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff's request for review of this decision was denied by the SSA Appeals Council on March 20, 2014.  R. 3-7.  Thus, the ALJ's unfavorable decision stands as the Commissioner's final determination of Plaintiff's DIB and SSI applications.  *See* 20 C.F.R. §§ 404.981, 416.1481.  Thereafter, Plaintiff commenced this appeal.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for various reasons. The undersigned addresses each argument in turn.

### A. The ALJ's Consideration of Plaintiff's Combined Impairments

Plaintiff first contends that the ALJ failed to properly consider all of Plaintiff's impairments in combination, as required by *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988). Quoting *Williams* without direct attribution, Plaintiff argues that the

Commissioner "is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process." *Id.* at 756 n.5; *accord* 20 C.F.R. §§ 404.1523 ("If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."), 416.923 (same); *see* Pl.'s Br. (Doc. No. 10) at 21; 42 U.S.C. § 423(d)(2)(B); *cf.* 20 C.F.R. §§ 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your [RFC]."), 416.945(e) (same). Plaintiff argues that the ALJ improperly "neglected to discuss in any detail" evidence in the record concerning Plaintiff's pain complaints and "fragmentized" Plaintiff's subjective allegations. Pl.'s Br. at 20-21. Plaintiff specifically argues that the ALJ failed to consider "'the possibility that psychological disorders *combine* with physical problems.'" Pl.'s Br. at 21 (internal quotation marks added) (quoting with added emphasis *Luna v. Bowen*, 834 F.2d 161, 166 (10th Cir. 1987)).

The ALJ specifically stated in his decision that he considered Plaintiff's impairments both singularly and in combination. *See, e.g.*, R. 17 (finding that Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals" a Listing (emphasis added)), 19 (stating that "all symptoms" were considered in reaching the RFC); *cf.* R. 15, 17 (stating that "all the evidence" and "the entire record" were "careful[ly] consider[ed]"). When an "ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word." *Wall*, 561 F.3d at 1070 (alteration and internal quotation marks omitted).

The ALJ was not required to expressly discuss every symptom-related allegation raised by Plaintiff in reaching the RFC determination. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairments or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see Bales v. Colvin*, 576 F. App'x 792, 798-99 (10th Cir. 2014). "[A]n ALJ is not required to discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted). In this case, the ALJ discussed the probative evidence, *see* R. 17-23, "and there is no indication that, despite not expressly mentioning [Plaintiff's] other medical problems, the ALJ did not take them into account." *Bales*, 576 F. App'x at 799; *accord Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (rejecting claimant's argument that ALJ did not consider combined effect of impairments when ALJ addressed "various impairments" and appellate court found "nothing to suggest they were not properly considered").

Further, the ALJ's decision specifically addresses medical issues that Plaintiff alleges were ignored. For example, the ALJ described Plaintiff's allegations of neck and back pain and anxiety, as well as hearing testimony and record evidence related thereto. *See* R. 19-22; Pl.'s Br. at 20-21. And with the exception of Plaintiff's subjective statements regarding her pain symptoms (which the ALJ properly discounted, as explained below), Plaintiff's argument fails to identify how any allegedly ignored medical problems, "either individually or in combination[] affected her functioning during the time she claims she was disabled," rendering any error in this regard

"harmless." *Bales*, 576 F. App'x at 799 (citing *Mays*, 739 F.3d at 578-79 ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of [RFC].")); 20 C.F.R. § 404.1512(c) (prescribing that claimant must provide unredacted evidence "that relates to whether or not [claimant is] . . . disabled")); *see also id.* § 416.912(c). Reversal is not warranted on this basis.

### B. The ALJ's Credibility Assessment

The assessment of a claimant's RFC generally requires the ALJ to "make a finding about the credibility of the individual's statements about [an impairment's] symptom(s) and its functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In determining a claimant's credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4. Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (internal quotation marks omitted). In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain

or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *accord* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3);

*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

Plaintiff's appellate attack on the ALJ's credibility assessment is two-pronged. First, Plaintiff contends that because her subjective complaints of pain were "well documented and supported by the medical evidence of record," the ALJ's failure to consider these subjective pain complaints was "in blatant violation of Tenth Circuit caselaw." Pl.'s Br. at 22-23. To the extent Plaintiff argues that the ALJ neglected to consider her pain complaints at all, such an argument is meritless. The ALJ repeatedly and specifically discussed Plaintiff's subjective pain complaints as related in Plaintiff's hearing testimony and as noted in the evidence of record. *See* R. 19-20, 21-22.

Second, Plaintiff argues that the ALJ improperly discounted her credibility in light of the "wealth of objective medical evidence" supporting her contentions and the "conspicuous absence of evidence supporting the ALJ's conclusions." Pl.'s Br. at 23-24. Plaintiff argues that the ALJ erred by failing to explain why he found Plaintiff's testimony not entirely credible and failing to closely and affirmatively link his credibility

findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms" associated with her medically determinable impairments to substantial evidence in the record. Pl.'s Br. at 23-24; *see* SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms, as first set forth in *Luna*, 834 F.2d at 163-66, and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010).

In addressing Plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 20.

The ALJ went on to note:

> [I]n her Function Report-Adult, [Plaintiff] described daily activities including shopping, handling her financial affairs, reading, playing computer games, and talking on the phone. She stated that she had no limitations on understanding, following instructions, getting along with others, paying attention, following spoken instructions, and getting along with authority figures. She stated that she had never been fired or laid off from a job because of problems getting along with other people. The undersigned finds that these statements and daily activities are inconsistent with [Plaintiff's] allegations of disability. Moreover, despite . . . her allegations of a disabling impairment, she has a history of several no-shows for treatment. The record reflects that her symptoms are well-controlled.

R. 20 (citing Exs. 4E (Pl.'s Function R., R. 169-76), 21F (Records from Central Oklahoma Community Mental Health Center, R. 398-420)).

Read in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Wilson*, 602 F.3d at 1144-45. Plaintiff does not allege that the ALJ misstated any of the above evidence, and the decision clearly demonstrates that the ALJ considered multiple prescribed factors in assessing Plaintiff's credibility—e.g., the treatment received and the "location, duration, frequency, and intensity of the individual's pain or other symptoms." *See* R. 19-23; SSR 96-7p, 1996 WL 374186, at *3. Plaintiff herself reported that she regularly walks the house, can prepare TV dinners and sandwiches, goes shopping once a week, plays computer games, and has visits from children and phone calls with family or friends almost every day. R. 169-76. Plaintiff does not point to any medical records indicating that her physicians restricted her daily activities. A claimant's ability to engage in daily activities and a lack of prescribed limitations by physicians may support an adverse credibility assessment. *See Wilson*, 602 F.3d at 1146; *Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ also "properly considered what attempts [P]laintiff made to relieve [her] pain," including multiple missed medical appointments, "in an effort to evaluate the veracity of [Plaintiff's] contention that [her] pain was so severe as to be disabling," as well as Plaintiff's report to her physician in March 2012 that "her symptoms are well controlled." *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000); R. 20, 414, 416, 417; *cf. Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (affirming ALJ's discrediting of claimant's assertion of restriction when claimant had not reported such a restriction to physician).

The Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). All of the reasons cited by the ALJ in the decision for discounting Plaintiff's credibility are well-supported by the record, and an ALJ is not required to conduct "a formalistic factor-by-factor recitation of the evidence." *See* R. 19-23; *Qualls*, 206 F.3d at 1372. Plaintiff has not shown that reversal is warranted on this basis.

### C. The ALJ's RFC and Step-Five Determinations

Plaintiff next argues that the ALJ's RFC and step-five determinations are not supported by substantial evidence for several reasons. Pl.'s Br. at 24-27. As noted above, the ALJ found that Plaintiff retained the ability to perform light work subject to various nonexertional restrictions, including: occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, crawling, and reaching overhead; no climbing of ladders, ropes, or scaffolds; understanding, remembering, and carrying out only simple, routine, and repetitive tasks; and responding appropriately to supervisors, coworkers, and usual work situations, but having no contact with the general public. R. 19; *see* 20 C.F.R. §§ 404.1567(b), .1569a(a), 416.967(b), .969a(a); SSR 83-10, 1983 WL 31251, at *5-6 (1983). The ALJ further found that Plaintiff retained the ability to work at jobs that exist in significant numbers in the national economy. R. 23-24; 20 C.F.R. §§ 404.1569a(a), 416.969a(a).

## 1. Ignored Testimony and Opinions

Plaintiff first asserts that the ALJ's RFC determination "completely disregarded [Plaintiff's] testimony regarding her pain and discomfort, as well as the findings and opinions of the treating and evaluating physicians." Pl.'s Br. at 25. As explained above, however, the ALJ did not ignore Plaintiff's testimony; he expressly considered Plaintiff's pain-related statements but declined to find them "entirely credible." R. 20. Further, Plaintiff's argument fails to direct the Court, through citation to the record, to any "findings and opinions" that were allegedly improperly disregarded. *See* Pl.'s Br. at 24-25. This shortcoming alone would be enough to deny the claim of error, *see Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that claimant must "frame and develop an issue" in a manner that is "sufficient to invoke appellate review"); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("[Claimant] does not identify which treating physician she feels was ignored, and we will not speculate on her behalf."). More significantly, however, Plaintiff does not point to any *work-related limitations* supported by the allegedly ignored evidence that were improperly omitted from the RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *6 (prescribing that "nonexertional capacity" must "be expressed in terms of work-related functions" or "[w]ork-related mental activities"); *Mays*, 739 F.3d at 578-79. Reversal is not warranted on this basis.

## 2. Vocational Expert Hypothetical

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart,* 436 F.3d

1163, 1168 (10th Cir. 2005), "given her age, education, and work experience." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). In making this determination, an ALJ may rely on a vocational expert's (VE) testimony regarding the jobs available to an individual whose vocational considerations, including functional limitations, correspond to those properly found to apply to the claimant. *See Qualls*, 206 F.3d at 1373 ("The ALJ propounded a hypothetical question to the VE that included all of the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."); *see also* 20 C.F.R. §§ 404.1560(b)-(c) (explaining that the agency may use a VE's testimony in response to hypothetical questions reflecting the claimant's RFC in order to determine whether the claimant can perform her past work or other work in the economy), 416.960(b)-(c) (same).

Plaintiff argues that the ALJ improperly relied upon the testimony provided by the VE at the administrative hearing to conclude that Plaintiff retained the ability to work at jobs that existed in significant numbers in the national economy. Pl.'s Br. at 25-26. At the hearing, the ALJ posed several different hypothetical scenarios to the VE, and Plaintiff's attorney followed with some variations. *See* R. 56-60. Plaintiff objects that the ALJ (i) "neglected to have the [VE] consider [Plaintiff's] obesity," and (ii) "appears to have ignored" the VE's testimony that a hypothetical individual subject to limitations beyond those included in the final RFC determination would be precluded from both sedentary and light work. Pl.'s Br. at 25.

As far as the first objection, this Court has held that the ALJ's discussion and

treatment of Plaintiff's impairment of obesity in the RFC determination was sufficient to comport with Social Security Ruling 02-1p. *See* Order of Sept. 21, 2015 (Doc. No. 18) at 3-4. *See generally* SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002) (prescribing that at steps four and five the ALJ must assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment"). Plaintiff points to no work-related limitation caused by Plaintiff's obesity that was improperly omitted from the hypothetical to the VE. *See Haddock*, 196 F.3d at 1088-89; SSR 02-1p, 2002 WL 34686281, at *7 ("We will consider any *functional limitations resulting from the obesity* in the RFC assessment . . . ." (emphasis added)). Having failed to show that the RFC determination is not supported by substantial evidence because additional limitations were required as a result of Plaintiff's obesity, Plaintiff cannot show that the ALJ erred by not instructing the VE to consider such unadopted additional limitations. *See Qualls*, 206 F.3d at 1373.

Plaintiff's second objection is based upon the VE's testimony regarding alternative hypotheticals, as opposed to the dispositive hypothetical relied on by the ALJ for his step-five conclusion. The fact that the VE was questioned by both the ALJ and Plaintiff's counsel about alternative, more restrictive scenarios does not establish that the proposed additional limitations (e.g., requiring a sit/stand option or being limited to only occasional handling and fingering, *see* R. 57-60) were required to be included in the RFC determination and dispositive VE hypothetical. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by

the record."); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) ("[A]ny (essentially tautological) opinions premised on [an unestablished, conclusive fact required to be assumed by plaintiff's counsel] clearly would not bind the ALJ."). Again, Plaintiff does not direct the Court to any support in the record showing that the dispositive VE hypothetical improperly omitted restrictions that were supported by substantial evidence (or included restrictions that were not so supported). *See* Pl.'s Br. at 25-26.

Plaintiff has not shown that the ALJ's reliance upon the VE's testimony in the RFC or at step five was improper or rendered the decision unsupported by substantial evidence.

### 3. Plaintiff's Mental Impairments and GAF Scores

Plaintiff next argues that the ALJ failed to adequately consider Plaintiff's mental impairments in formulating the RFC. Without citation to the ALJ's decision, case law, regulations, or the administrative record, Plaintiff contends that "[e]vidence of symptom-free periods should not compel a finding that disability based on a mental disorder has ceased. Mental illness can be extremely difficult to predict and individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate."[1] Pl.'s Br. at 26. Plaintiff objects that the ALJ improperly failed to discuss Plaintiff's "generalized anxiety disorder or her mood disorder due to a general medical condition in any detail at all." Pl.'s Br. at 26.

In making this argument, Plaintiff generally fails to direct the Court to any medical

---

[1] This language appears to have been borrowed, without attribution, from decisions issued by the Eighth Circuit Court of Appeals. *See, e.g.*, *Vester v. Barnhart*, 416 F.3d 886, 893 (8th Cir. 2005) (Heaney, J., dissenting).

or other evidence regarding her mental impairments that was improperly or inadequately considered by the ALJ. *See* Pl.'s Br. at 26. Relatedly, Plaintiff broadly argues that her "mental impairments would make it very difficult for her to be reliable" and that "[t]he medical evidence of record clearly establishes the limiting effects of [Plaintiff's] mental impairments," but Plaintiff does not cite any evidence of such limiting effects that was ignored or improperly weighed by the ALJ. *See* Pl.'s Br. at 26. Thus, Plaintiff fails to show that the RFC determination "is overwhelmed by other evidence in the record" or that "there is [only] a mere scintilla of evidence supporting it." *Branum*, 385 F.3d at 1270; *Murrell*, 43 F.3d at 1389 n.2; *Threet*, 353 F.3d at 1190; *cf. United States v. Lewis*, 594 F.3d 1270, 1275 (10th Cir. 2010) ("Although there may be such evidence in the record . . . , it is not this court's duty to scour without guidance a voluminous record for evidence supporting [a party's] theory.").

The only specific evidence addressed by Plaintiff is two global assessment of functioning, or "GAF," scores, which Plaintiff contends undermine the ALJ's conclusion that she is capable of performing light work. Pl.'s Br. at 26-27 (citing R. 241, 293). "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR")). Plaintiff was assessed with a GAF score of 45 in November 2010 and a GAF score of 57 in April 2011. R. 241, 293.

Although the ALJ did not specifically mention the two GAF scores, the written decision reflects that the ALJ did expressly consider the relevant records in which those

scores appear. *See* R. 21 (citing Ex. 1F, R. 238-64; Ex. 5F, R. 291-95); *cf. Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (upholding denial of benefits where ALJ did not specifically reference relevant GAF scores but "it seem[ed] clear that he considered them"). Regardless, while GAF scores must "be considered with the rest of the record," such scores alone do not establish inability to work. *Butler*, 412 F. App'x at 147; *see Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (noting that a claimant's impairment reflected in a low GAF score "might lie solely within the social, rather than the occupational sphere"); *cf. Camp v. Barnhart*, 103 F. App'x 352, 354 (10th Cir. 2004) (holding that a GAF score of 50, without evidence it impaired the claimant's ability to work, did not establish an impairment).

Here, Plaintiff's November 2010 score of 45 would indicate "serious" symptoms, but the April 2011 GAF score of 57 would indicate only "moderate" symptoms. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).[2] The older, lower score was assessed by a social worker, however—while the newer, higher score was issued as part of a Psychological Evaluation by a psychologist holding a PhD degree. *Compare* R. 241, *with* R. 293, 294. A social worker is not a "medical source" or an "acceptable medical source," and therefore this score cannot be considered a "medical opinion." *See* 20 C.F.R. § 404.1513(a), (d); *id.* § 416.913(a), (d). *See generally id.* §§ 404.1527(a)(2) ("Medical

_____

[2] A GAF score of 41-50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school function (e.g., no friends, unable to keep a job).'" *Keyes-Zachary*, 695 F.3d at 1162 n.1 (quoting DSM-IV-TR at 34). A GAF score of 51-60 indicates: "'Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Id.* (quoting DSM-IV-TR at 34).

opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."), 416.927(a)(2) (same).  Any opinion issued by a nonmedical source such as a social worker would not be entitled to controlling weight and "cannot establish the existence of a medically determinable impairment."  *Id.* §§ 404.1513(d), 416.913(d); SSR 06-3p, 2006 WL 2329939, at *2, *4-6 (Aug. 9, 2006).

As a result, Plaintiff's citation to the GAF scores, without more, does not show that the lower GAF score was "significantly probative" or that the ALJ's omission of discussion of this score undermined the RFC determination.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (noting that an ALJ "is not required to discuss every piece of evidence" but must discuss "evidence supporting his decision," "uncontroverted evidence he chooses not to rely upon," and "significantly probative evidence he rejects").  Nor has Plaintiff cited any authority for the proposition that these two scores—and, particularly, the more recent score of 57 indicating only "moderate difficulty" in occupational functioning—are inconsistent with, or not adequately accounted for by, the ALJ's limitation in the RFC determination that Plaintiff "have no contact with the general public" and be restricted to "simple, routine, and repetitive tasks."  *See* R. 19.

For all of these reasons, reversal is not warranted based upon the ALJ's consideration of Plaintiff's mental impairments or GAF scores.

*D. The ALJ's Consideration of Treating Physician Evidence and Development of the Record*

*1. The Treating Physician Rule*

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a), 416.902, .913(a). Subject to evaluation by the ALJ, the highest weight generally is given to the opinion of a "treating source," which includes a physician or psychologist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, .1527(c), 416.902, .927(c); *Langley*, 373 F.3d at 1119.

When considering the opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician is given such weight if it is *both* well-supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

## 2. *Background*

The record reflects that between July 2012 and March 2013, Plaintiff was treated at South Central Medical & Resource Center ("SCMRC") for a variety of physical and mental complaints. *See* R. 22-23, 421-24, 428-47. Among the evidence submitted for inclusion in the record prior to the administrative hearing were Exhibit 22F, a Physician's Assessment signed by Diana Hager, MD, and dated September 19, 2012 ("PA Form"); and Exhibit 23, a Physical Exertions Limitations questionnaire also signed by Dr. Hager and dated September 19, 2012 ("PEL Form"). *See* R. 422, 424. Exhibit 25F, which consisted of two SCMRC treatment records from July and September 2012, was added to the record prior to the ALJ's issuance of his written decision on January 23, 2013. *See* R. 428-34. Exhibit 26F, consisting of SCMRC treatment records from February and March 2013, was submitted for inclusion in the record after the ALJ's decision was issued but prior to disposition of Plaintiff's administrative appeal. *See* R. 436-47. The SSA Appeals Council considered this last item of evidence but found that Exhibit 26F "did not provide a basis for changing the [ALJ's] decision." R. 4-7.

In his written decision, the ALJ discussed the evidence generated from SCMRC:

> In a Physician's Assessment completed on September 19, 2012, [Plaintiff's] physician opined that [Plaintiff] had significant and persistent disorganization of motor function in two extremities, which result in sustained disturbance of gait and station or gross and dexterous movements. [Sh]e stated the claimant also had an organic mental disorder demonstrated by a loss of specific cognitive abilities or affective changes, with the medically documented persistence of disorientation to time and place, memory impairment, perceptual or thinking disturbances, change of personality, emotional lability, or loss of measured intellectual ability (of at least 15 points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing). [Sh]e also stated that the claimant had marked restriction of the activities of daily living, marked difficulties in maintaining social functioning, deficiencies of concentration, persistence, or pace resulting in frequent failure to complete task[s] in a timely manner, and repeated episodes of deterioration or decompensation in work or work-like setting [that] cause the individual to withdraw from that situation or experience exacerbation of sign[s] and symptoms[,] which may include deterioration of adaptive behaviors (Exhibit 22F). In addition, in a Physical Exertion Limitations Questionnaire, this physician opined that [Plaintiff] was capable of no work whatsoever (Exhibit 23F). The undersigned gives these opinions little weight. It was made in the context of a form in which the physician simply checked a few boxes; the opinion was not offered in the form of a narrative. Moreover, there is no evidence of disorganization of motor function or an organic mental disorder. Finally, the claimant testified that she had only been seen by this physician for the last couple of months prior to the hearing.

R. 22-23.

### 3. Discussion

On appeal, Plaintiff asserts that the ALJ improperly assigned the PA Form and the PEL Form "little weight" and that because this evidence was issued by a treating physician who "has seen [Plaintiff] on a regular basis," and is uncontradicted by any other record evidence, it was entitled to controlling weight. Pl.'s Br. at 27-28. The Commissioner does not dispute Plaintiff's characterization of Dr. Hager as a treating

physician, and Plaintiff's relationship with Dr. Hager, when considered as a whole, does appear to qualify for "treating physician" status. *See* R. 422, 424, 428-47; 20 C.F.R. §§ 404.1502, 416.902. *But see* R. 433-34, 437-38 (reflecting that Plaintiff's SCMRC visits of July 19, 2012, and March 13, 2013, were conducted by a physician's assistant rather than by Dr. Hager). Even assuming that Dr. Hager was Plaintiff's treating physician, however, the undersigned finds no error in the ALJ's assignment of little weight to these Forms.

First, the ALJ's finding that the Forms should not be given controlling weight is implicit in the ALJ's second-prong discussion of the specific weight that he assigned these Forms. *See* R. 22-23; *Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding "any imaginable oversight" at prong one to be "clearly harmless" when ALJ did not expressly say he was not affording treating physicians' opinions controlling weight, but did explain that they were entitled to no weight because they were inconsistent with the medical evidence, and there was substantial evidence to support that decision). *See generally Keyes-Zachary*, 695 F.3d at 1167 ("[C]ommon sense, not technical perfection, is our guide."). The ALJ's discussion of the second part of the inquiry—what weight should be given the treating physician's opinions and why—sufficiently explains the ALJ's decision to not assign the Forms controlling weight and the reason why. *See* R. 22-23; *Tarpley*, 601 F. App'x at 643-44; *cf. Kruse v. Astrue*, 436 F. App'x 879, 883 (10th Cir. 2011) (accepting ALJ's evaluation of treating physician's opinion when ALJ did not state specific weight he gave opinion but the assignment of little weight was "readily apparent from the ALJ's rationale").

Next, although Plaintiff refers broadly to Dr. Hager's "opinions," the pertinent conclusion set forth on the PEL Form was not a medical opinion, but rather Dr. Hager's checking of a box to indicate her belief that Plaintiff was able to perform "No Work Whatsoever" on a day-to-day basis in a regular work setting. R. 424. This conclusion constitutes a nonmedical opinion on whether Plaintiff would be able to return to work, which is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)(1); *Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014) (holding that treating physician's opinion that claimant could not work "was not entitled to controlling weight because the issue of disability is not a medical opinion subject to controlling weight"); *see also* 20 C.F.R. §§ 404.1527(d)(3) (prescribing that no "special significance" is given to the source of an opinion on issues reserved to the Commissioner), 416.927(d)(3) (same); *cf. Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (upholding ALJ's assignment of less than controlling weight to treating physician's opinion regarding claimant's ability to return to work, which did not contain the physician's "judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform").

The ALJ cited three reasons for his assignment of little weight to the PA Form and PAL Form. Each of these was a valid basis for discounting the Forms. The ALJ first noted, accurately, that Dr. Hager's opinions were presented through "a form in which the physician simply checked a few boxes" and were "not offered in the form of a narrative." R. 22. An ALJ may properly consider "the degree to which the physician's opinion is supported by relevant evidence" in assigning weight to a treating physician's opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3); *accord id.* § 416.927(c)(3). "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *accord Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (upholding ALJ's assignment of little weight to treating physician as supported by substantial evidence where opinion was "brief, conclusory, and unsupported by objective findings" (internal quotation marks omitted)).

The ALJ also noted Plaintiff's testimony that she had only been seen by Dr. Hager for a couple of months prior to the hearing on October 2, 2012. *See* R. 23, 60-61. The record reflects that as of the date of the hearing, Plaintiff had been treated at SCMRC only twice: once by a physician's assistant as a new patient on July 19, 2012, and once more by Dr. Hager on September 19, 2012. R. 429-34. Following the hearing—and as reflected in evidence considered by the Appeals Council—Plaintiff had two more office visits at SCMRC (one with the physician's assistant; one with Dr. Hager), plus some bloodwork and two CT spine scans requested by Dr. Hager but reviewed by a radiologist.[3] *See* R. 437-47; Pl.'s Br. at 27 (citing R. 446, 447). In evaluating the weight to be given to the PA and PEL Forms, the ALJ was required to consider "the length of the treatment relationship and the

---

[3] Plaintiff does not challenge the Appeals Council's determination that this later-submitted evidence did not provide a basis for upsetting the ALJ's decision.

frequency of examination" and "the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).  Here, the ALJ accurately recognized the limited treatment relationship between Plaintiff and Dr. Hager, and appropriately considered their limited interaction in assessing the opinions set forth in the Forms.

Finally, the ALJ stated that "there is no evidence of disorganization of motor function or an organic mental disorder."  R. 22-23.  This statement is relevant to the PA Form, in which Dr. Hager checked boxes to indicate that Plaintiff's condition resulted in "[s]ignificant and persistent disorganization of motor function in two extremities" and "[a]n organic mental disorder" with numerous accompanying restrictions and difficulties. R. 422.  In other words, the ALJ found that there was no evidence to support the primary conclusions marked by Dr. Hager on the PA Form.  Such a finding reflects the ALJ's prescribed consideration of both "the degree to which the physician's opinion is supported by relevant evidence" and "consistency between the opinion and the record as a whole." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see, e.g.*, *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013).

As noted above, a treating physician's opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."  *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted).  Even Dr. Hager's own treatment record from September 19, 2012—the first time Dr. Hager treated Plaintiff and the date she

issued both Forms—reflects diagnoses of only shoulder pain and generalized anxiety disorder. *See* R. 429-31. This record does not support Dr. Hager's opinion in the PA Form of "[s]ignificant and persistent disorganization in motor function in two extremities" with "sustained disturbance" and "loss of specific[]cognitive abilities or affective changes with the medically documented persistence of" various mental impairments and restrictions. *Compare* R. 429-31, *with* R. 422. To support the no-work-whatsoever limitation stated in the PEL form, Dr. Hager noted only vague conclusions reflecting less severe impairment: Plaintiff has degenerative disease and chronic muscular pain; Plaintiff walks with a cane; and Plaintiff has difficulty with anxiety disorder and is seldom able to leave home. R. 424. In addition, Plaintiff argues that there is no evidence contrary to the Forms, but she points the Court toward only one piece of *supporting* medical evidence: the CT scans of Plaintiff's spine reviewed by Dr. Lancaster in March 2013 at Dr. Hager's request. *See* Pl.'s Br. at 27; R. 446-47. This evidence relates only to Plaintiff's spine and so cannot be solely relied upon to show that Dr. Hager's Forms—addressing, among other subjects, muscular pain and anxiety disorder—are sufficiently "well-supported" by acceptable techniques to be entitled to the presumption of controlling weight. *See Watkins*, 350 F.3d at 1300.

### 4. Conclusion

The ALJ's assessment of little weight to the Forms is supported by substantial evidence and is "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight.'"  *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).  The

ALJ did not err in evaluating this evidence.  Reversal is not required on this basis.

### 5. *ALJ's Failure to Develop the Record*

Plaintiff additionally argues that the ALJ failed to fulfill his duty to develop the

record by neglecting to request a detailed narrative from Dr. Hager "to resolve any doubts

[that] he had regarding her findings."  Pl.'s Br. at 28-29.  The Tenth Circuit has discussed

the balance that must be struck in a disability determination between a claimant's burden

to prove her claim and the Commissioner's burden to develop the record:

> In making a determination regarding disability, the ALJ "shall
> develop a complete medical history," which includes a "reasonable effort"
> to obtain records from the claimant's treating physician.   42 U.S.C.
> § 423(d)(5)(B).   Regulations clarify this statutory duty.   Specifically, 20
> C.F.R. § 404.1512(d) states that "[b]efore we make a determination that
> you are not disabled, we will develop your complete medical history."  That
> regulation also makes clear, however, that the social security claimant has
> an obligation to assist the ALJ in its duty:
>
>> (a) General. In general, you have to prove to us that you are
>> blind or disabled.  Therefore, you must bring to our attention
>> everything that shows that you are blind or disabled.  This
>> means that you must furnish medical and other evidence that
>> we can use to reach conclusions about your medical
>> impairment(s) and, if material to the determination of whether
>> you are blind or disabled, its effect on your ability to work on
>> a sustained basis.  We will consider only impairment(s) you
>> say you have or about which we receive evidence.
>>
>> . . . .
>
> 20 C.F.R. § 404.1512(a).
>
> Given this statute and regulation, we have explained that the burden
> to prove disability in a social security case is on the claimant, and to meet
> this burden, the claimant must furnish medical and other evidence of the
> existence of the disability.   A social security disability hearing is
> nonadversarial, however, and the ALJ bears responsibility for ensuring that
> an adequate record is developed during the disability hearing consistent

with the issues raised. Thus, an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citations and internal quotation marks omitted) (citing prior version of 20 C.F.R. § 404.1512(c)); *see also* 20 C.F.R. §§ 404.1520b(c), 416.912, .920b(c). The *Maes* court further explained that when a claimant is represented by counsel, the ALJ may rely upon the claimant's counsel to structure the claimant's case and to identify any issue requiring further development. *See id.*

In the administrative proceedings, Plaintiff was represented by counsel. *See* R. 33, 86-87. At the hearing, Plaintiff's attorney specifically requested and was granted leave by the ALJ to submit additional records from Dr. Hager "in support of 22F and 23F" (the PA and PEL Forms). R. 35, 61. Plaintiff's attorney did submit such an additional record, Exhibit 25F, to the ALJ. *See* R. 428-34. And while Plaintiff's administrative appeal was pending, Plaintiff's attorney submitted an additional set of treatment records—Exhibit 26F—that was specifically considered by the Appeals Council. *See* R. 3-4, 6, 7, 435-47.

The Commissioner was entitled to rely upon Plaintiff's counsel's submissions of Exhibits 25F and 26F as Plaintiff's proffered support for the Forms. "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes*, 522 F.3d at 1097. Plaintiff was represented by counsel, and the ALJ did not have a duty, under the circumstances, to act as plaintiff's advocate. *See id.*; *accord Graham v. Apfel*, No. 97-6373, 1998 WL 321215, at *3-4 (10th Cir. June 5, 1998).

Further, the ALJ's written decision makes clear that his reference to the absence of "a narrative" was not a finding that the ALJ lacked sufficient evidence to reach a disability determination but, rather, an explanation that the ALJ declined to give controlling weight to Dr. Hager's Forms in part because the opinions as provided in the Forms consisted only of check-the-box conclusions.  R. 22; *see* 20 C.F.R. §§ 404.1520b(c), 416.920b(c).  In other words, a request for additional testing or medical record evidence—as may be properly made by an ALJ faced with insufficient or inconsistent evidence—would not have remedied the cited absence of detail in Dr. Hager's opinions.  The suggestion by Plaintiff that the ALJ should have directed Dr. Hager to provide that detail—rather than, as the ALJ did, giving Plaintiff leave to submit additional support—would impose on the ALJ the duty to obtain different, better supported evidence on Plaintiff's behalf.  That obligation resided with Plaintiff and her counsel.  *See Maes*, 522 F.3d at 1097.  Plaintiff has not shown that the ALJ erred with respect to development of the record.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72(c).  Any such objections must be filed with the Clerk of this Court by October 13, 2015.  The

parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 29th day of September, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE